**Ronald M. HALYSHYN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Frederick E. WELLS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 18503, 18504.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 15, 1964.

Decided Oct. 6, 1964.

Rehearing Denied Jan. 18, 1965.

Certiorari Denied May 24, 1965.

See 85 S.Ct. 1565, 1566.

Mr. James J. Laughlin, Washington, D. C., for appellant in No. 18503.

Mr. Chester C. Shore, Washington, D. C., for appellant in No. 18504.

Mr. Allan Palmer, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., and Daniel A. Rezneck, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and WILBUR K. MILLER and WASHINGTON, Circuit Judges.

### JUDGMENT

PER CURIAM.

These cases came on to be heard on the record on appeals from the United States District Court for the District of Columbia, and were argued by counsel.

On consideration whereof, it is ordered and adjudged by this court that the judgments of the District Court appealed from in these cases are affirmed.

WASHINGTON, Circuit Judge (dissenting):

I would reverse, as I do not think the Government proved beyond a reasonable doubt that the appellants committed the crime of assault with a dangerous weapon.

Before BAZELON, Chief Judge, and FAHY, WASHINGTON, DANAHER, BASTIAN, BURGER, WRIGHT and McGOWAN, Circuit Judges, in Chambers.

### ORDER

PER CURIAM.

On consideration of the petitions for rehearing *en banc*, filed by the appellants, it is

Ordered by the Court *en banc* that appellants' aforesaid petitions are denied.

BAZELON, Chief Judge (dissenting):

Evidence at appellants' trial established that after midnight on February 17, 1963, two men robbed and assaulted one William Snyder in a public square. Neither the victim nor an eyewitness to the offense could identify appellants as the two men. At the time of the offense, however, the eyewitness did see the license number of the car in which the assailants left the scene. Police located this car and two young men who testified at the trial that either five or seven men, including themselves, were in this car at the robbery scene. One of these witnesses, Couper, testified that he

was driving the car and stopped at the public square to permit appellants to leave the car for a comfort station. Couper did not, however, testify that he saw appellants commit the offense; he testified that appellant returned to the car after "about two or three minutes" and said nothing to him. At this testimony, the prosecutor claimed surprise and introduced Couper's prior testimony before a grand jury and a statement to the Park Police in which Couper had said that one of the appellants, after returning to the car, had admitted fighting with "some man in the park." Couper now disavowed those statements, and testified that he had lied both to the grand jury and the Park Police.

A second witness, Kimble, testified that he also had been in the car with appellants and others at the robbery scene. Kimble testified that appellants left the car for the comfort station, and that after a few moments he followed them to the comfort station. Kimble further testified that while he was at the comfort station appellants left and, by the time he had returned to the car, appellants were seated in the car. The prosecutor then introduced Kimble's prior testimony before the grand jury and a statement to the Park Police in which Kimble had said that, when he returned from the comfort station, he saw appellants "fighting with a man on the sidewalk." Kimble thereupon testified that he had lied in making the statement to the grand jury and Park Police.

This was all of the evidence against appellants. The other person or persons allegedly also in the car with appellants at the robbery scene were not called as witnesses. From this evidence, the jury could reasonably conclude only that Snyder was robbed and assaulted by two men, and that either five or seven young men were at the scene, any two of whom might have been the assailants.

The trial court recognized the inadequacy of the Government's case. The court stated, out of the presence of the jury, that both Couper and Kimble were wholly unworthy of belief, and that he

was "not sure but that Couper and Kimble may have been the robbers, and the reason they hurried to make the statements to the Park Police and testify before the Grand Jury * * * [was to] get out from under." The court also stated,

> "We know that two of [the men in the car] committed this robbery. The problem is which two. It might have been any two.
>
> "* * * [A]n Assistant United States Attorney many years ago * * * said to me one time, 'We know it takes 13 votes to get a conviction in your court.' I am afraid you haven't got the 13th vote here, Mr. [Prosecutor].
>
> "If the jury finds the defendants guilty I would have grave doubt as to whether I would let it stand."

As the court apparently recognized, no reasonable jury could find beyond a reasonable doubt that appellants, rather than the others in the car, had committed the offense charged. The court nevertheless allowed the jury to consider the case. The jury found appellants not guilty of robbery but guilty of assault with a dangerous weapon. The court refused to disturb that conviction. One explanation for the court's action appears from the court's remark at sentencing: "Now I do not feel that there was any miscarriage of justice even though intellectually I thought the evidence left much to be desired. Morally I have no doubt of the defendant's guilt. *I think that all five were in complicity in this robbery or in this attack.*" (emphasis supplied.) But all five (or seven) men in the car were not on trial, nor were appellants charged with aiding and abetting in, or conspiracy to commit, an offense. Appellants were charged with specific acts of robbery and assault. The evidence does not sustain those charges.

If this were simply a close case on the sufficiency of the evidence, it would not be appropriate for rehearing *en banc*. But it is clearly more. It involves serious questions affecting the administration of

criminal justice in this jurisdiction.[1]  I therefore vote to grant the petition for rehearing *en banc*.

WASHINGTON, Circuit Judge, who dissented from the decision of the panel on the ground that sufficient evidence of guilt on the charge of assault with a dangerous weapon was lacking, remains of the same view, and considers that a rehearing *en banc* would clarify many problems with respect to the trial of cases where such assaults are charged.

---

1. See, *e.g.*, Naples v. United States, 113 U.S.App.D.C. 281, 307 F.2d 618 (1962) (*en banc*); Blunt v. United States, 100 U.S.App.D.C. 266, 244 F.2d 355 (1957); Jackson v. United States, 117 U.S.App. D.C. 325, 329 F.2d 893 (1965); Cun-

ningham v. United States, 119 U.S.App. D.C. ——, 340 F.2d 787, decided December 3, 1964; Lloyd v. United States, 119 U.S.App.D.C. ——, 343 F.2d 242, petition for rehearing *en banc*, dated Nov. 6, 1964.